UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| JAMES D. LEVEILLEE | : | |
| | : | |
| v. | : | C.A. No. 04-540ML |
| | : | |
| JO ANNE B. BARNHART | : | |
| Commissioner of Social Security | : | |

## REPORT AND RECOMMENDATION

This matter is before the Court for judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Social Security Disability Income ("SSDI") benefits under the Social Security Act ("Act"), 42 U.S.C. § 405(g). Plaintiff filed his Complaint on December 22, 2004 seeking to reverse the decision of the Commissioner. Plaintiff has filed a Motion to Summary Judgment. The Commissioner has filed a Motion for an Order Affirming the Decision of the Commissioner. Plaintiff elected not to file a reply brief by the filing due date. This matter has been referred to me for preliminary review, findings and recommended disposition. 28 U.S.C. § 636(b)(1)(B). Based upon my review of the entire record, my independent legal research, and the legal memoranda filed by the parties, I find that there is substantial evidence in this record to support the Commissioner's decision and findings that the Plaintiff is not disabled within the meaning of the Act. Consequently, I recommend that the Commissioner's Motion for an Order Affirming the Decision of the Commissioner (Document No. 11) be GRANTED and that the Plaintiff's Motion for Summary Judgment (Document No. 10) be DENIED.

## I.      PROCEDURAL HISTORY

Plaintiff filed an application for SSDI on July 22, 2002, alleging disability as of July 1, 2002. (Tr. 90-92). The application was denied initially (Tr. 59-64) and on reconsideration (Tr. 67-70). On March 4, 2004, Administrative Law Judge ("ALJ") Martha H. Bower held a hearing at which Plaintiff, represented by counsel, and a vocational expert ("VE"), testified. (Tr. 23-58). The ALJ issued a decision on August 18, 2004, finding that Plaintiff was not under a disability and not entitled to SSDI. (Tr. 8-17). The Appeals Council denied Plaintiff's request for review on October 22, 2004 (Tr. 4-6). A timely appeal was then filed with this Court.

## II.     THE PARTIES' POSITIONS

Plaintiff argues that the Commissioner's decision should be reversed because the ALJ failed to properly consider Plaintiff's subjective complaints and failed to follow the regulations in evaluating and making findings regarding Plaintiff's mental impairments. Plaintiff further argues that the ALJ gave inappropriate weight to the opinions of the treating physician and examining psychologist and failed to include all Plaintiff's limitations in her questions to the vocational expert. The Commissioner disputes Plaintiff's claims and argues that there is substantial evidence in the record as a whole to support her decision that Plaintiff is not entitled to disability benefits.

## III.    THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Ortiz v. Sec'y of Health

and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (*per curiam*); Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Frustaglia v. Sec'y of Health and Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (*per curiam*); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled. Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. Seavey, 276 F.3d at 8. To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. Id.; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980)

(remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow her to explain the basis for her decision. Freeman v. Barnhart, 274 F.3d 606, 609-10 (1st Cir. 2001). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council). After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction. Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g). To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for failure to submit the evidence at the administrative level. See Jackson v. Chater, 99 F.3d 1086, 1090-92 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant. Id. With a sentence six remand, the parties must return to the court after remand to file modified findings of fact. Id.

-4-

The court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings. Id.

## IV.   THE LAW

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

### A.   Treating Physicians

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments, is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. See Keating v. Sec'y of Health and Human Servs., 848 F.2d 271, 275-76 (1st Cir. 1988).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986). When a

-5-

treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R § 404.1527(d). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. See 20 C.F.R. § 404.1527(d)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527(e). The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (see 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner. 20 C.F.R. § 404.1527(e). See also Dudley v. Sec'y of Health and Human Servs., 816 F.2d 792, 794 (1st Cir. 1987).

### B.    Developing the Record

The ALJ has a duty to fully and fairly develop the record.    Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991). The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained. See 42 U.S.C. § 406; Evangelista v. Sec'y of Health and Human Servs., 826 F.2d 136, 142 (1st Cir. 1987). The obligation to fully and fairly develop the record exists

if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel. Id. However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty. See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

### C. Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986). In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision. Carrillo Marin v. Sec'y of Health and Human Servs., 758 F.2d 14, 17 (1st Cir. 1985).

### D. The Five-step Evaluation

The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth,

if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f).  Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five.  Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B).  Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act.  Seavey, 276 F.3d at 5.  The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits.  Deblois v. Sec'y of Health and Human Servs., 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(i)(3), 423(a), (c).  If a claimant becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability.  Id.

### E.    Other Work

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  Seavey, 276 F.3d at 5.  In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a

claimant. Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines (the "grids"). Seavey, 276 F.3d at 5. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. Id.; see also Heckler v. Campbell, 461 U.S. 458, 103 S. Ct. 1952, 76 L.Ed.2d 66 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills. Nguyen, 172 F.3d at 36. In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert. Heggarty, 947 F.2d at 996. It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy. See Ferguson v. Schweiker, 641 F.2d 243, 248 (5th Cir. 1981). In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

### 1. Pain

"Pain can constitute a significant non-exertional impairment." Nguyen, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C.

§ 423(d)(5)(A). The ALJ must consider all of a claimant's statements about his symptoms, including

pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with

the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs

and laboratory findings show medical impairments which reasonably could be expected to produce

the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the

following factors:

> (1)  The nature, location, onset, duration, frequency, radiation, and
>      intensity of any pain;
>
> (2)  Precipitating and aggravating factors (e.g., movement,
>      activity, environmental conditions);
>
> (3)  Type, dosage, effectiveness, and adverse side-effects of any
>      pain medication;
>
> (4)  Treatment, other than medication, for relief of pain;
>
> (5)  Functional restrictions; and
>
> (6)  The claimant's daily activities.

Avery v. Sec'y of Health and Human Servs., 797 F.2d 19, 29 (1st Cir. 1986). An individual's

statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

### 2.    Credibility

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must

articulate specific and adequate reasons for doing so, or the record must be obvious as to the

credibility finding. Rohrberg, 26 F. Supp. 2d at 309. A reviewing court will not disturb a clearly

articulated credibility finding with substantial supporting evidence in the record. See Frustaglia, 829

F.2d at 195. The failure to articulate the reasons for discrediting subjective pain testimony requires

that the testimony be accepted as true. See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case. See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982). If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).

## V.    APPLICATION AND ANALYSIS

Plaintiff was forty-two years old at the time of the ALJ hearing. He has a seventh grade education and past work experience as an automobile mechanic and laborer. Plaintiff last worked as a factory laborer on or about July 1, 2002 and claims he left due to the physical requirements of the job and because he "couldn't deal with all the people that [he] had to work with in the environment." (Tr. 29-31). Plaintiff filed his application for benefits on July 22, 2002. (Tr. 90). Plaintiff filed a previous application for benefits which was denied in February of 1988. (Tr. 101).

In support of his 2002 application, Plaintiff described his disability as "lower back pain," "can't stand to[o] long, can't sit to[o] long." (Tr. 106). Plaintiff indicated that he had been seen by a doctor for his back but did not answer the question asking whether or not he had been seen by anyone for "emotional or mental problems that limit your ability to work." (Tr. 108). Plaintiff's initial request for reconsideration dated October 30, 2002 again focused on his back pain but the phrase "learning problem," in different hand-writing, is included in the limitation description section. (Tr. 115). Plaintiff engaged counsel and shortly thereafter was referred by counsel for a

-11-

psychological evaluation by Judith Lubiner, Ph.D., to support Plaintiff's application for benefits. (Tr. 77 and 153).

Plaintiff appeared for this evaluation showing "signs of neglect in his grooming" and dressed "inappropriately, wearing a T-shirt that said, 'where the fuck is my medication.'" (Tr. 154). Based on a single evaluation and interview of Plaintiff, Doctor Lubiner concluded that Plaintiff's mental impairments were in most cases "severe" and disabling. (Tr. 153-162). However, the ALJ noted, and it appears undisputed, that Plaintiff "has never been hospitalized or received treatment, counseling or medication for any mental or emotional problems from a psychiatrist, psychologist or other mental health care professional." (Tr. 13).

At the time of the ALJ hearing, Plaintiff was living in an apartment with his wife, three daughters, one daughter's boyfriend and his granddaughter. (Tr. 31-32, 34). His wife was working third shift as a CNA, and his two older daughters worked days. (Tr. 32). His youngest daughter and granddaughter were attending school. Id. His daughter's boyfriend worked part-time, a few hours a day. Id. at 35. Plaintiff assisted his granddaughter in the morning before she got on the bus for school "for the afternoon," presumably kindergarten as she was five years old at the time. Id. at 32-33. He got her clothes ready and gave her something to eat. Id.

Because Plaintiff's wife worked at night and slept during the day, Plaintiff was "basically" alone for the day after his granddaughter left for school. (Tr. at 32). After Plaintiff got out of bed ("between 8:00 and 9:00 a.m."), he usually found "something around the house that needs to be taken care of" such as dishes or picking "some stuff up in the yard." Id. at 34. Plaintiff usually cooked breakfast for himself and his granddaughter, and if they get up early enough, Plaintiff might take his granddaughter for a ride to visit some of his friends. Id. at 35. He sometimes walked "down

the road" on a summer night with his wife to see an antique car show or, on occasion, takes her to Wal-Mart. Id. at 36. After his granddaughter left for school, Plaintiff watched television and took "cat naps" during the afternoon as well as doing "things" he can do around the house. Id. at 39. Plaintiff and his older daughter shared the responsibility for making dinner. Id.

Plaintiff testified that he took Oxycontin for pain. (Tr. at 40). He stated that it "doesn't appear" to affect his thinking but does upset his stomach. Id. at 48. As to tasks, Plaintiff states that he usually needs help moving things around the house, but he could wash dishes, vacuum and mow the lawn. Id. at 49-50.

## A.    The ALJ Properly Evaluated Plaintiff's Mental Impairments

Plaintiff argues that remand is required because the ALJ did not document her evaluation of Plaintiff's mental impairments under the special technique described at 20 C.F.R. § 404.1520a. The Commissioner contends that although the ALJ may not have explicitly articulated findings as to each of the four "special technique" criteria, a review of her decision in its entirety indicates that the ALJ adequately considered all of the criteria in light of the evidence of record. The ALJ found that Plaintiff had "severe" mental impairments of "bipolar, schizotypal personality and organic mental disorders" but that such impairments were not of listing-level severity. (Tr. 12). Based on these mental impairments, the ALJ's RFC assessment restricted Plaintiff to "simple, repetitive tasks of a 1-2-3 step nature and minimal work-related interaction with co-workers and the public." (Tr. 16, Finding 6).

As Plaintiff correctly notes, in evaluating a claimant's alleged mental impairments, the ALJ is required to follow a "special technique" outlined in 20 C.F.R. § 404.1520a. Pursuant to the technique, the ALJ must determine whether or not Plaintiff's impairments are "severe" by rating the

-13-

functional limitation which results from the impairment(s) in four specific areas: "[a]ctivities of daily living, social functioning; concentration, persistence or pace; and episodes of decompensation." 20 C.F.R. § 404.1520a(c)(3)-(4), (d).  While this Court is troubled by the ALJ's failure to follow a mandatory regulatory review procedure, several courts in this Circuit and this Court previously have found that the failure to explicitly follow the prescribed technique is "harmless error" if the record otherwise supports the ALJ's conclusion and a remand would not "change, alter or impact the result."  See, e.g., Arruda v. Barnhart, 314 F. Supp. 2d 52, 79-81 (D. Mass. 2004) and Eaton v. Barnhart, No. 04-195ML, Report and Recommendation at p. 13 (D.R.I. March 15, 2005).  See also Querido v. Barnhart, 344 F. Supp. 2d 236, 250-54 (D. Mass. 2004).  Because of efficiency concerns, this Court sees no benefit in a meaningless remand and agrees with and again adopts the standard articulated above, which inquires whether remand would change, alter or impact the result.

The ALJ did find a moderate restriction in concentration, and she limited Plaintiff to simple, repetitive tasks of a 1-2-3 step nature and minimal interaction with co-workers and the public.  (Tr. 14).  While the ALJ made these findings relative to residual functional capacity, they are sufficient to provide the required ratings in the functional areas of social functioning and concentration, persistence or pace.  Querido, 344 F. Supp. 2d at 251-252; Arruda, 314 F. Supp. 2d at 79-80. Furthermore, the ALJ's findings relative to these limitations are supported by Dr. LaFazia's report that Plaintiff's activities of daily living, social functioning and concentration all appeared to be adequate (Tr. 183), Dr. Laurelli's normal mental status exam (Tr. 224) and Dr. Keuthen's assessment at the reconsideration level of only moderate limitations in social functioning and concentration, persistence and pace.  (Tr. 205).  Furthermore, with respect to social functioning, Plaintiff testified to caring for his granddaughter and occasionally visiting with a friend and going out with his wife

or daughter. (Tr. 32-33, 35-36, 39). With respect to concentration, he was able to drive, cook and watch television. (Tr. 35, 37, 39, 131-135). These activities reasonably suggest no more than moderate limitations, inconsistent with listing-level severity.

Although the ALJ made no specific findings relative to activities of daily living or episodes of decompensation, there is no credible evidence in the record to indicate that Plaintiff had any significant mental limitations in performing daily activities or that he experienced any episodes of decompensation. With respect to daily activities, Plaintiff primarily testified to limitations in physical functioning, which the ALJ adequately accounted for in her residual functional capacity assessment to the extent she found them to be supported by the record. Otherwise, Plaintiff was mentally capable of such daily activities as caring for his five year old granddaughter, doing house work, mowing the lawn, cooking and driving. (Tr. 32-35, 49, 131-135). Dr. LaFazia reported that Plaintiff's activities of daily living seemed adequate (Tr. 183), and Dr. Keuthen assessed only a mild limitation in daily activities. (Tr. 205).

As to episodes of decompensation, the absence from the ALJ's decision of any finding relative to this area of functioning is harmless given the absence of any mention of a mental impairment by Plaintiff's treating physician and the lack of any hospitalizations[1] or mental health treatment. In addition, Dr. Keuthen did not assess any episodes of decompensation (Tr. 205), and she opined that a residual functional capacity assessment was necessary (Tr. 195), confirming that Plaintiff's mental impairments were not of listing-level severity.

---

[1] See 20 C.F.R. § 404, Subpart P, Appendix 1, § 12.00(C)(4) (episodes of decompensation may be inferred when there is evidence of hospitalizations).

It is Plaintiff's burden to show that he has an impairment or impairments which meet(s) or equal(s) a listed impairment in Appendix 1. <u>Dudley v. Sec'y of Health and Human Servs.</u>, 816 F.2d 792, 793 (1ˢᵗ Cir. 1987). While Plaintiff argues that the ALJ erred in not documenting her application of the special technique under 20 C.F.R. § 404.1520a, he fails to make any specific showing that his mental impairments actually met or equaled any listing so as to alter the ALJ's ultimate conclusion. The only evidence that appears to be inconsistent with the ALJ's step-three finding is Dr. Lubiner's consultative evaluation. As discussed below, however, the ALJ reasonably rejected Dr. Lubiner's assessment of Plaintiff's mental limitations. (Tr. 14).

Dr. Lubiner's appraisal contradicts the great majority of the record as to Plaintiff's mental functioning. Plaintiff engaged in significant semiskilled and skilled work activity for twenty years prior to his alleged onset date (Tr. 53, 121-125), despite what Dr. Lubiner considered "a long history of social maladjustment" (Tr. 158), and Dr. Lubiner made her assessment only three months after Plaintiff stopped working at a semiskilled job. Dr. Lubiner speculated that the verbal limitations she assessed had resulted from a head injury (Tr. 155), which Plaintiff reportedly sustained in a motorcycle accident in about 1988. (Tr. 184). However, it appears that Plaintiff performed skilled work for approximately twelve years after that injury and performed semiskilled work thereafter. (Tr. 53, 121). Thus, the evidence of Plaintiff's work activity is inconsistent with Dr. Lubiner's assessed limitations, as well as her explanations as to their origins and duration. Furthermore, the primary reason that Plaintiff himself has given for his alleged disability, even in his meeting with Dr. Lubiner, is back pain. (Tr. 7, 28, 106, 153, 154). Similarly, Plaintiff testified before the ALJ that he quit his last job because he was told to lift something but refused because his back hurt too much.

(Tr. 48). However, he earlier told Dr. Lubiner that he quit because he was concerned about one of his children, which interfered with his ability to focus at work. (Tr. 153).

In addition, as the ALJ found (Tr. 14), Dr. Lubiner's assessment of Plaintiff's limitations is inconsistent with Plaintiff's presentation at the hearing and his complete lack of mental health treatment. Plaintiff argues that his behavior at the hearing is not an accurate indication of his ongoing behavior in a full-time work setting. Pl. Mem. at 12. However, the same could also be said of Plaintiff's behavior during his one-time meeting with Dr. Lubiner on referral from his attorney. In fact, Plaintiff's behavior in that meeting was inconsistent not only with his presentation at the hearing, but also with his lengthy skilled and semiskilled work history (Tr. 53, 121-125), Dr. LaFazia's report which was based on observations accumulated over a ten-year period as Plaintiff's treating physician (Tr. 183), Dr. Laurelli's normal mental status findings (Tr. 224), the lack of any mental health treatment, the observations of a disability claims interviewer (Tr. 103), and even Plaintiff's own testimony as to his mental functioning (Tr. 43-46). Finally, there is no evidence that Plaintiff pursued any treatment even after Dr. Lubiner's evaluation.

In rejecting Dr. Lubiner's assessment, the ALJ also reasonably considered the fact that despite the absence of any significant mental health issues in the medical record, Plaintiff's attorney referred him to Dr. Lubiner for the purpose of producing evidence to support his disability claim. (Tr. 14). While Plaintiff contends that this was not a valid reason for rejecting Dr. Lubiner's assessment, the ALJ did not rely solely on these circumstances. See Gonzalez Perez v. Sec'y of Health and Human Servs., 812 F.2d 747, 749 (1st Cir. 1987) (ALJ must rely on something more than "timing and impetus" of medical report). Another Magistrate Judge of this Court recently criticized the practice of obtaining a consultative psychological evaluation under similar circumstances. See

-17-

Nield v. Barnhart, No. CA 03-494LO at 11 (D.R.I. Mar. 29, 2005). ("For reasons which escape this Court, except to attempt to create out of whole cloth some basis for disability due to a mental impairment, the plaintiff's counsel referred her client...for a psychological assessment. No physician had recommended this referral and this record does not support any claim for disability based upon any mental impairment."). See also Cline v. Sec'y of Health and Human Servs., 875 F. Supp. 435, 440 (N.D. Ohio 1995) ("Plaintiff's *counsel's* 'referral' to a psychiatrist is not relevant where plaintiff's *physicians* made no such referral." (emphasis in original)); Coggon v. Barnhart, 354 F. Supp. 2d 40, 53 (D. Mass. 2005) (ALJ reasonably gave less weight to physician's statement, finding it to be an advocacy opinion).

Even assuming, *arguendo*, that the ALJ erred in considering Dr. Lubiner's assessment as invalid based on the source of and purpose for the referral, the ALJ gave other valid reasons for rejecting Dr. Lubiner's opinion, and thus, her decision must be affirmed. Arroyo v. Barnhart, 295 F. Supp. 2d 214, 221 (D. Mass. 2003); citing Reddick v. Chater, 157 F.3d 715, 726 (9th Cir. 1998); and Gonzalez Perez, 812 F.2d at 749. Here, the ALJ's rejection of Dr. Lubiner's assessment was reasonable given her additional findings that said assessment was inconsistent with Plaintiff's behavior at the hearing and the lack of any mental health treatment. (Tr. 14). In addition, Dr. Lubiner's assessment is also inconsistent with Dr. LaFazia's statement that Plaintiff's mental functioning was adequate over his lengthy treatment relationship with Plaintiff (Tr. 183), Dr. Laurelli's normal mental status findings (Tr. 224), the state agency assessments (Tr. 182, 179, 205, 211-212), Plaintiff's work history (Tr. 53, 121-125) and his own testimony as to his capacities. (Tr. 32, 34-37, 45-46).

The ALJ adequately considered Plaintiff's mental impairments at steps two and three of the sequential evaluation process. While her evaluation of these impairments might arguably have tracked the regulations in a more precise fashion, remand is not warranted because Plaintiff has failed to meet his burden of showing that his mental impairments were of listing-level severity. See Senne v. Apfel, 198 F.3d 1065, 1067 (8th Cir. 1999) (deficiency in opinion-writing must have practical effect on outcome to be considered reversible error). The ALJ reasonably rejected Dr. Lubiner's evaluation[2] – the only evidence arguably inconsistent with the ALJ's step-three finding. Accordingly, substantial evidence supports the ALJ's determination that Plaintiff's mental impairments did not meet or equal a listing.

**B.    The ALJ's Credibility Findings and RFC Assessment Are Also Supported by Substantial Evidence of Record**

In Finding 5 of her decision, the ALJ "finds the Claimant's allegations regarding his limitations not wholly credible for the reasons set forth in the body of the decision." (Tr. 16). Plaintiff contends that the matter should be remanded because the ALJ made "no mention of the plaintiff's credibility in the body of the decision" and failed to apply the Avery criteria. This Court disagrees.

Contrary to Plaintiff's assertion, the ALJ provided several reasons for her negative assessment of Plaintiff's credibility. For instance, the ALJ noted that Plaintiff had received very little treatment for his back. (Tr. 13). See 20 C.F.R. § 404.1529(c)(3) (in assessing pain, ALJ considers medication and treatment received). In fact, aside from a few consultations with Dr.

---

[2] In addition to having a valid basis for rejecting Dr. Lubiner's assessment, the ALJ did not err in rejecting Dr. LaFazia's assessed physical limitations (Tr. 240-242) as contradicting the objective findings of his past examinations of Plaintiff as well as those of Drs. Kader and Laurelli. (Tr. 14). The ALJ's physical RFC finding is supported by substantial evidence.

Laurelli over a year before his alleged onset date (Tr. 223-230), Plaintiff was primarily treated with medication by his family doctor, Dr. LaFazia. Plaintiff did not see Dr. LaFazia until over a month after he allegedly became disabled (Tr. 231), and since alleging disability, he sought treatment for back pain on just eight occasions over the next year and a half. (Tr. 231-236, 238-239). The medical record shows that Plaintiff was only treated with medication and a two-month course of physical therapy, which occurred two years prior to his alleged onset date. (Tr. 243-250). His back condition had not required any epidural injections (Tr. 41), Dr. Laurelli felt that fusion surgery was only marginally indicated (Tr. 227), and Plaintiff had not undergone any surgery. (Tr. 40). Nor is there any evidence that Plaintiff had required any emergency room treatment for his alleged pain. Such limited evidence of the need for treatment and the conservative treatment measures provided are simply inconsistent with Plaintiff's complaints of pain, which he described as being at a level of "10" (described as being indicative of pain requiring emergency room care) four to five days a week. (Tr. 40-41). "[A]n unexplained inconsistency between the claimant's characterization of the severity of [his] condition and the treatment [he] sought to alleviate that condition is highly probative of the claimant's credibility." Mickles v. Shalala, 29 F.3d 918, 930 (4th Cir. 1994).

The ALJ also reasonably considered the limited supporting objective medical evidence of record. (Tr. 13). See 20 C.F.R. §§ 404.1529(a) and (c) (in evaluating pain, the ALJ considers medical signs and laboratory findings). Specifically, the ALJ noted (Tr. 13) that MRI studies and a CT scan showed no spinal canal stenosis or herniated discs (Tr. 139, 225, 228), that the thorough consultative examinations of neurosurgeon Dr. Laurelli (Tr. 224) and orthopedist Dr. Kader (Tr. 185) each showed no significant abnormalities and that Dr. LaFazia's repeated exams showed that Plaintiff was neurologically intact. (Tr. 144-152, 231-239). While "complaints of pain need not be

-20-

precisely corroborated by objective findings,...they must be consistent with medical findings." Dupuis v. Sec'y of Health and Human Servs., 869 F.2d 622, 623 (1st Cir. 1989). A claimant's allegations of pain "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges [he] suffers." Mickles, 29 F.3d at 927. In addition, the ALJ also considered (Tr. 13) the assessments of the state agency physicians, which were inconsistent with Plaintiff's allegation of completely disabling pain. (Tr. 187-188, 215-216). See 20 C.F.R. § 404.1529(c)(1) (in evaluating intensity and persistence of symptoms, ALJ considers medical opinion evidence).

The ALJ also evaluated Plaintiff's complaints relative to his mental impairments. (Tr. 13). Plaintiff alleged having a "learning problem" (Tr. 115), and he made vague complaints of having problems dealing with people, getting a "bad attitude" and having mood swings with brief periods of depression. (Tr. 42, 46). The ALJ discussed the fact that, despite Plaintiff's complaints, he was articulate and affable, attended well, understood the questions asked of him and responded appropriately at the hearing. (Tr. 13). An ALJ may reasonably consider such observations in assessing credibility. 20 C.F.R. § 404.1529(c)(3); SSR 96-7p. The ALJ also considered (Tr. 13) inconsistencies between Plaintiff's current claims of a disabling mental impairment and the fact that he never received any mental health treatment whatsoever and felt that he could take care of his mental health issues by himself (Tr. 46), and that according to Dr. LaFazia, Plaintiff never reported any mental health concerns to him. (Tr. 183). See Villa v. Sullivan, 895 F.2d 1019, 1024 (5th Cir. 1990) (ALJ may rely on a lack of treatment as evidence of nondisability).

The ALJ also noted (Tr. 13) that over the course of Dr. LaFazia's longstanding treating relationship with Plaintiff, he never observed any limitations in mental functioning (Tr. 183) and that the state agency psychologist at the reconsideration level only assessed moderate limitations in social functioning and concentration, persistence and pace.  (Tr. 205).  See 20 C.F.R. § 404.1529(c)(1) (medical opinions are relevant to credibility).  The ALJ also considered the fact that despite Plaintiff's assessed low verbal IQ score and memory deficits (Tr. 155-156, 160), he had performed skilled work as an automobile mechanic for many years.  (Tr. 53, 121).  See 20 C.F.R. § 404.1529(c)(3); SSR 96-7p (prior work record relevant to claimant's credibility).  An impairment is not disabling if the individual was able to work regularly for many years while affected to virtually the same extent as at the time of alleged disability.  Bush v. Shalala, 94 F.3d 40, 46 (2nd Cir. 1996); see also Roberts v. Apfel, 222 F.3d 466, 468-69 (8th Cir. 2000) (Evidence of claimant's past ability to work for years supported ALJ's determination that claimant could do work that had intellectual requirements similar to or less taxing than those of his past work).

While the ALJ did not specifically discuss each of the credibility factors in her decision, there is no requirement that she do so.  In fact, Social Security Ruling 96-7p explains that an ALJ need not mechanically recite findings on each credibility factor listed in the regulations so long as the ALJ gives specific reasons for the weight given to the individual's statements.  SSR 96-7p.  Similarly, courts have held that a failure to discuss the credibility factors in great detail is not legal error in itself.  Koenig v. Chater, 936 F. Supp. 776, 784 (D. Kan. 1996), citing Porter v. Chater, 895 F. Supp. 1427, 1436 (D. Kan. 1995).  Moreover, the First Circuit has recognized that an ALJ's questioning about the Avery factors during the hearing indicates conformity with the guidelines set forth in Avery.  Frustaglia, 829 F.2d at 195.  See also Guyton v. Apfel, 20 F. Supp. 2d 156, 166 (D. Mass.

1998) ("The transcript from the oral hearing also indicates that the Administrative Law Judge conducted an appropriate <u>Avery</u> inquiry into [the claimant's] subjective complaints of pain....").

Here, the ALJ indicated that she considered Plaintiff's testimony (Tr. 14), and her questioning of Plaintiff during the hearing shows that such consideration included testimony relative to the pertinent <u>Avery</u> factors.  The ALJ is simply not bound by Plaintiff's self-serving testimony, <u>Bianchi v. Sec'y of Health and Human Servs</u>, 764 F.2d 44, 45 (1st Cir. 1985), and has the discretion to reject such testimony if it is, as in this case, unsupported by the record in its entirety.  The ALJ thoroughly considered the entire record in making her credibility finding which is entitled to due deference.  <u>Da Rosa v. Sec'y of Health and Human Servs.</u>, 803 F.2d 24, 26 (1st Cir. 1986).  The Court finds no error.

> **C.**     **The ALJ's Hypothetic Question Posed to the VE Was Not Legally Defective**

Plaintiff's final argument merits little discussion.  Plaintiff contends that remand is warranted because of a flaw in the hypothetical posed by the ALJ to the VE.  In particular, Plaintiff argues that the ALJ failed to include the limitation noted by one state agency psychologist that Plaintiff "may miss 1-3 days of work per month due to occasional disrupted sleep and low energy."  (Tr. 179).

Plaintiff concedes that his attorney could have, but did not, pose a question to the VE about the effect of that limitation on Plaintiff's RFC.  Further, the claimed limitation is speculative and not based on any prior evidence from Plaintiff's work history.  Finally, even if the limitation should have been included in the hypothetical, the error is harmless since Plaintiff offers no reasonable argument that this speculative and relatively minor non-exertional limitation would have changed the VE's ultimate opinion or the outcome of this case before the ALJ.

## VI.    CONCLUSION

For the reasons stated above, I recommend that the Commissioner's Motion for an Order

Affirming the Decision of the Commissioner (Document No. 11) be GRANTED and that the

Plaintiff's Motion for Summary Judgment (Document No. 10) be DENIED.  I further recommend

that the District Court enter Final Judgment in favor of Defendant.


LINCOLN D. ALMOND
United States Magistrate Judge
September 26, 2005